Argued and submitted November 4, 2004, decision of the Court of Appeals and judgment of the circuit court affirmed January 27, 2005

WALSH CONSTRUCTION CO.,
*Petitioner on Review,*

*v.*

MUTUAL OF ENUMCLAW,
*Respondent on Review.*

(CC 0104-03398; CA A117368; SC S51104)

104 P3d 1146

James C. Chaney, of The Chaney Firm LLC, Eugene, argued the cause and filed the briefs for petitioner on review.

Thomas M. Christ, of Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Thomas W. Brown.

William H. Walters, of Miller Nash LLP, Portland, argued the cause and filed the briefs on behalf of *amici curiae* Oregon-Columbia Chapter of Associated General Contractors, Associated Oregon Industries, Pacific Northwest Regional Council of Carpenters, Oregon Building Industry Association, Columbia Corridor Association, Hoffman Construction Company, Senator Frank Morse, Oregon Remodelers Association, Howard S. Wright Construction Co., and Skanska USA Building, Inc. With him on the briefs was D. Gary Christensen.

Christopher A. Rycewicz, of Rycewicz & Chenoweth, Portland, filed the brief on behalf of *amicus curiae* American Subcontractors Association.

CARSON, C. J.

## CARSON, C. J.

This action for breach of an insurance contract involves the meaning of ORS 30.140(1). That statute prohibits construction agreements from requiring a person or that person's insurer to indemnify another party against liability caused in whole or in part by the indemnitee's negligence. The question on review is whether that prohibition extends to an additional insured endorsement that plaintiff Walsh Construction Co. (Walsh) obtained from a subcontractor on a policy that defendant Mutual of Enumclaw (Enumclaw) had issued to the subcontractor. Both the trial court and the Court of Appeals concluded that the prohibition applies. We agree and affirm the decision of the Court of Appeals and the judgment of the trial court.

The facts are straightforward. Walsh, a general contractor, entered into a subcontract with Ron Rust Drywall, Inc. (Rust) to perform work on a Walsh project. The subcontract required Rust to procure liability insurance coverage naming Walsh and its agents as additional insureds on Rust's liability policy. Rust's policy, which Enumclaw earlier had issued, already contained a blanket additional insured endorsement that automatically extended the coverage that the subcontract required.

Later, a Rust employee was injured on the job and made a claim against Walsh; Walsh tendered the claim to Enumclaw. Enumclaw, however, refused the tender, arguing, in part, that the additional insured provision of the subcontract violated ORS 30.140. Walsh then settled the case with the employee and brought this breach of contract action against Enumclaw as an additional insured under Rust's policy.

Both parties moved for summary judgment. Enumclaw argued that, because the additional insured provision of the subcontract was void under ORS 30.140, Walsh was not a legally cognizable additional insured and, therefore, was not entitled to defense or indemnity from Enumclaw. Walsh countered by arguing that ORS 30.140 applies only to agreements to indemnify and that an agreement to procure insurance is something different. The trial

court rejected that argument, as did the Court of Appeals. *Walsh Construction Co. v. Mutual of Enumclaw*, 189 Or App 400, 76 P3d 164 (2003).[1] We allowed Walsh's petition for review.

ORS 30.140(1) provides:

> "Except to the extent provided under subsection (2) of this section, *any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another* against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void."

(Emphasis added.)

Walsh focuses on the emphasized part of the statutory wording set out above and argues that its subcontract with Rust did not require either Rust or Rust's insurer, Enumclaw, to indemnify Walsh. Instead, in Walsh's view, the subcontract required only that Rust procure insurance for Walsh's benefit. Walsh continues by arguing that the term "indemnity" connotes unlimited liability exposure, whereas insurance limits the insurer's liability to the amount of coverage purchased. As support for its argument that the distinction makes a difference, Walsh relies primarily upon *Montgomery Elevator Co. v. Tuality Community Hosp.*, 101 Or App 299, 790 P2d 1148, *rev den*, 310 Or 243 (1990), a split, en banc Court of Appeals decision interpreting a workers' compensation statute, along with the decisions from other jurisdictions upon which the majority opinion in that case relied.

Enumclaw argues that *Montogmery Elevator Co.* is inapposite and otherwise disagrees with Walsh's analysis, asserting:

> "Walsh's argument overlooks the statute's reference to insurance. ORS 30.140(1) doesn't just invalidate any requirement that one person * * * indemnify another. It also invalidates any requirement that that person's insurer * * * indemnify the other. * * * [T]hat language can refer

---

[1] Walsh did not argue below, and does not contend here, that Rust in any way was responsible for the employee's injury.

only to a provision that one party add the other to its insurance policy, thus obligating its insurer to indemnify the other."

(Emphasis omitted.)

Our evaluation of the interpretive question that this case presents leads us to conclude that, with respect to the text and context of the wording at issue, the Court of Appeals' discussion in this case correctly assessed the statute's meaning. Further, we perceive no benefit in attempting to reshape that analysis for purposes of our own disposition. Accordingly, we adopt the following excerpt from the Court of Appeals decision, which Presiding Judge Haselton authored:

"We agree with [Enumclaw] that *Montgomery Elevator Co.* is, ultimately, inapposite. That case involved an entirely different statutory scheme, with materially different statutory language.[3] Rather, in construing ORS 30.140, we must begin at the beginning—with that statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

"ORS 30.140 provides, in part:

" '(1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damages arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.

" '(2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors.'

"It is undisputed that the exception described in subsection (2) does not apply in this case. We are concerned solely with the construction and application of subsection (1).

"Neither ORS 30.140 itself nor any other contextually pertinent Oregon statute defines 'indemnify.' However, in standard usage, 'indemnify' means

" '[t]o restore the victim of a loss, *in whole or in part*, by payment, repair, or replacement. To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him. To make good; to compensate; to make reimbursement to one of a loss already incurred by him.'

"*Black's Law Dictionary* 692 (5th ed 1979) (emphasis added). Thus, ORS 30.140(1) encompasses agreements by which one party (or that party's insurer) is obligated to assume at least partial financial responsibility for the other party's liability.

"That understanding is corroborated by the evolution of ORS 30.140(1). As originally enacted in 1973, the statute provided, in part:

" '(1)   Any provision in a construction agreement which requires a person to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused or contributed to by the negligence of the indemnitee in the design or by the sole negligence of the indemnitee in the inspection of the work that is the subject of the construction agreement is enforceable only if the indemnitee secures or maintains insurance covering such risks for the protection of the indemnitor.

" '(2)   In no event shall the indemnification obligation under such provisions be greater than the limits of the insurance secured by the indemnitee.'

"Or Laws 1973, ch 570, § [ ] 2. Thus, initially, the statute permitted indemnification agreements in construction contracts but, in subsection (2), 'capped' any such obligation by reference to the indemnitee's policy limits.

"In 1987, the statute was amended to combine the original subsections (1) and (2) and to add a new subsection (2):

" '(1)   Any provision in a construction agreement which requires a person to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused or contributed to by the negligence of the indemnitee in the design or by

the sole negligence of the indemnitee in the inspection of the work that is the subject of the construction agreement is enforceable only if the indemnitee secures or maintains insurance covering such risks for the protection of the indemnitor. In no event shall the indemnification obligation under such provisions be greater than the limits of the insurance secured by the indemnitee.

" '(2) Notwithstanding subsection (1) of this section, any provision in a construction agreement which requires a person *or that person's surety or insurer to indemnify another against liability* for damage arising out of death or bodily injury to persons or damage to property caused by the sole negligence of the indemnitee is void.'

"Or Laws 1987, ch 774, § 25 (emphasis added). Thus, the critical statutory language in this case first appeared in the 1987 version of the statute—and then, as part of an exception to the general principle that an 'indemnification' obligation was permissible. As with the original statute, 'indemnification,' in the 1987 version, was not an absolute and open-ended concept; rather, again, any 'indemnification' obligation was necessarily limited by reference to the extent of the indemnitee's insurance coverage.

"The pertinent portions of the statute underwent a final change in 1995.[4] The legislature deleted the prior subsection (1), altered and renumbered the prior subsection (2) as subsection (1), and added a new subsection (2):

" '**(1)** [*Notwithstanding subsection (1) of this section,*] **Except to the extent provided under subsection (2) of this section**, any provision in a construction agreement [*which*] **that** requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused **in whole or in part** by the [*sole*] negligence of the indemnitee is void.

" '**(2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the**

**fault of the indemnitor's agents[,] representatives or subcontractors.'**

"Or Laws 1995, ch [704], § 1 (new material in boldface; deleted material in italics and brackets).

"Thus, the 1995 amendments essentially inverted the structure of the 1987 version of the statute. Whereas subsection (1) of the 1987 revision of the statute defined a universe of *permissible* indemnification provisions, subject to the 'notwithstanding' exception set out in subsection (2), subsection (1) of the 1995 statute stated a general *prohibition* of indemnification provisions, subject only to the exception described in subsection (2). In addition, the general proscription, now embodied in subsection (1), was expanded to encompass agreements to indemnify for damages arising 'in part' from the indemnitee's negligence. Notwithstanding that inversion and expansion, the statute remained constant in prohibiting agreements by which a party's insurer would be required to indemnify another party for damages arising from the latter party's negligence.

"In sum, the text of ORS 30.140, and its historic evolution, strongly suggests that the statute prohibits not only 'direct' indemnity arrangements between parties to construction agreements but also 'additional insurance' arrangements by which one party is obligated to procure insurance for losses arising in whole or in part from the other's fault.

---

"[3] In *Montgomery Elevator Co.*, the issue was 'whether the exclusive liability provision of the Workers' Compensation Act, ORS 656.018(1), voids an agreement to purchase liability insurance.' 10[1] Or App at 301. ORS 656.018(1) (1989) provided, in part:

" '(a)   The liability of every employer who satisfies the duty required by ORS 656.017(1) [to provide workers' compensation insurance for subject workers] is exclusive and in place of all other liability arising out of compensable injuries to the subject workers * * * specifically including claims for * * * indemnity asserted by third persons from whom damages are sought on account of such injuries * * *.

" '* * * * *

" '(c)   * * * [A]ll agreements or warranties contrary to the provisions of paragraph (a) of this subsection entered into after July 19, 1977, are void.'

"In a closely divided en banc decision, [the Court of Appeals] concluded that that statute did not apply to 'additional insured' agreements.

"⁴ In 1997, the legislature amended subsection (3) of the statute, defining the term 'construction agreement.' Or Laws 1997, ch 858, § 1. That subsection in that amendment had no bearing on any issue presented here."

*Walsh Construction Co.*, 189 Or App at 405-08 (emphasis, ellipses, and brackets in original).

The Court of Appeals opinion then continues by discussing the legislative history surrounding the 1995 amendments to ORS 30.140 as further support for its ultimate conclusion:

"Whether the shifting allocation of risk is accomplished directly, *e.g.*, by requiring the subcontractor itself to indemnify the contractor for damages caused by the contractor's own negligence, or indirectly, *e.g.*, by requiring the subcontractor to purchase additional insurance covering the contractor for the contractor's own negligence, the ultimate—and [in this respect] statutorily forbidden—end is the same."

*Walsh Construction Co.*, 189 Or App at 410. As indicated above, we agree with that conclusion. However, because we also conclude that the foregoing textual and contextual analysis of the statutory wording goes further than "strongly suggest[ing]" the statute's meaning, *id.* at 405, and instead demonstrates the legislature's intent conclusively, we determine that consideration of legislative history is unnecessary. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) ("If the legislature's intent is clear from the * * * inquiry into text and context, further inquiry is unnecessary.").²

---

² Walsh itself implicitly recognizes the strength of the contextual evidence set out above by attempting to avoid it altogether:

"[I]t has never been the case that 'context' includes additions, deletions, and inversions in a particular statute occurring years—or in this case,

Having resolved the issue that the parties have presented, we briefly turn to the contention of *amici curiae* Oregon-Columbia Chapter of the Associated General Contractors and others that this court should address a technical matter pertaining to one aspect of the Court of Appeals' disposition: that the additional insured endorsement provision of the subcontract is "void." *Amici* argue that, in light of subsection (2) of ORS 30.140, the Court of Appeals should have held that the additional insured provision was void "only to the extent that, in a given case, it would require a party 'to indemnify another' for 'the fault of the indemnitor.' "

As noted above, however, Walsh did not contend that its subcontractor Rust was negligent, either in whole or in part, with respect to the employee's injury. Therefore, even assuming that *amici* are in a position to raise that issue, *see, e.g., Finney v. Bransom,* 326 Or 472, 481 n 8, 953 P2d 377 (1998) (declining to consider argument that *amicus* advanced, "because it was never presented in any recognizable form to the Court of Appeals"), the Court of Appeals correctly decided this case within the scope that the parties chose to litigate it.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

*decades*—before the statute is interpreted by the court. That is *legislative history* * * *."

(Emphasis in original.) On that account, Walsh simply is incorrect. *See, e.g., Krieger v. Just,* 319 Or 328, 336, 876 P2d 754 (1994) ("[W]ording changes adopted from session to session are a part of context of the present version of the statute being construed.").